Mary H. ROSEWALL, Plaintiff-Appellee,

v.

Marion FOLSOM, Secretary of Health, Education and Welfare, Defendant-Appellant.

No. 11764.

United States Court of Appeals
Seventh Circuit.

Jan. 9, 1957.

John B. Stoddart, Jr., U. S. Atty., Springfield, Ill., Marcus A. Rowden, Attorney, U. S. Department of Justice, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., Melvin Richter, Attorney, Department of Justice, Washington, D. C., for appellant.

Robert E. Hunt, Peoria, Ill., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

DUFFY, Chief Judge.

Plaintiff brought this action under Section 205(g) of the Social Security Act, 42 U.S.C.A. 405(g) to obtain judicial review of a disallowance of her claim for widow's insurance benefits under Section 202(e) of the Act, 42 U.S.C.A. 402 (e). Her application for benefits was based upon her being the widow of Edwin G. Rosewall, a deceased insured wage earner who died in the State of Washington on January 21, 1952.

A hearing was held before a Referee of the Social Security Administration who found that plaintiff was not "living with" wage earner at the time of his death as required by Section 202(e) of the Act, and concluded that she was therefore not entitled to widow's insurance benefits. Plaintiff requested and was granted a review by the Appeals Council. On May 8, 1952 the Appeals Council adopted the Referee's determination and affirmed his decision. This constituted the final decision of the Secretary of Health, Education and Welfare within the meaning of Section 205(g) of the Act. The complaint herein prayed for a reversal of the administrative decision. On December 27, 1955, the District Court entered judgment reversing the Secretary's determination and ordered defendant pay to plaintiff widow's insurance benefits.

The findings of the Referee disclosed that plaintiff and the wage earner were married in 1917 and lived together until sometime in 1939, at which time they resided in Peoria, Illinois. The wage earner had been unemployed for a short period, but he then obtained work in 1939 which took him away from the city of Peoria. After he left that city he failed to provide for the plaintiff, and on September 7, 1939 she caused him to be arrested and brought to trial on a charge of non-support. He pleaded guilty, and on September 11, 1939 the Peoria County Court ordered that he be placed on probation for a period of one year, and to pay the plaintiff $25 on September 13, 1939, $50 on October 5, 1939, and $50 on the 5th day of each month thereafter for the period of the year of probation. Wage earner paid the $50 per month for a period of eight months but paid nothing thereafter. On September 5, 1940 the Probation Officer filed a report with the County Court showing wage earner was in arrears, and an alias capias was issued on September 6, 1940 but was never executed, apparently because the wage earner could not be located.

Section 216(h) (2) of the Social Security Act as amended, 42 U.S.C.A. 416 (h) (2) provides in part: " * * * a widow shall be deemed to have been living with her husband at the time of his death if they were both members of the same household on the date of his death, or she was receiving regular contributions from him toward her support on such date, or he had been ordered by any court to contribute to her support." It will be noted that the first two clauses refer respectively to "the date of his death" and "on such date." But such wording is not repeated after the last clause. Plaintiff relies heavily upon the fact the words "date of his death" were not again repeated.

However, Section 404.1111 of Social Security Administration Regulation No. 4 (20 C.F.R. 404.1111), provides as follows in pertinent part: "Definition of 'living with'—The wife or husband, as the case may be, of the individual upon whose wages and self-employment income her or his application is based is deemed to be 'living with' such individual at the time application for a wife's or husband's benefit is filed, and such indi-

vidual's widow or widower is deemed to have been living with such individual *at the time of such individual's death, if, at such time, any one of the following conditions is met:* \* \* \* (c) such individual had *at such time* been ordered by any court to contribute to the applicant's support.—This condition is met if such individual is legally compelled to contribute to the support of the applicant at the particular time by reason of any order, judgment, or decree of a court of competent jurisdiction, regardless of whether he or she *actually made such contribution.* In determining the existence of such legal compulsion, any such order, judgment or decree shall be considered as in full force and effect unless it has expired or has been vacated." (Emphasis supplied.)

As plaintiff was not a member of the household of wage earner at the time of his death, nor was she receiving regular contributions from him for her support on that date, the question for our consideration is whether the probation order of the Peoria County Court entered eleven years previous to the date of wage earner's death, brought the plaintiff within the provisions of the Statute.

It was the view of the District Court that it was not necessary for plaintiff to show a support order enforceable against the wage earner at the time of his death; that it was sufficient that a wage earner had been ordered to contribute to plaintiff's support during his life time. In holding this view, the District Court was clearly in error.

■ It is, of course, a possible construction to say that as the first two clauses of Section 216(h) (2) of the Act referred respectively to "the date of death" and "on such date" while a similar clause was not repeated in or after the third clause, that Congress intended the last clause to be treated differently than the first two. However, reading the three clauses together there is no indication of any intent by Congress to have a time effective as to the third clause which is different from that applicable to the first two clauses.

■ But more compelling is the contemporaneous construction of the term "living with" by the Agency charged with the administration of the Act. Such construction is entitled to great weight. United States v. American Trucking Associations, Inc., 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345; Fawcus Machine Co. v. United States, 282 U.S. 375, 378, 51 S.Ct. 144, 75 L.Ed. 397; Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796.

The "living with" provision in the Act was originally enacted as part of the 1939 amendments which became effective January 1, 1940. The regulation hereinbefore quoted was adopted shortly thereafter. In 1950 Congress re-enacted the "living with" definition now found in Section 216(h) (2) of the Act. Congress in no way showed a disapproval of the previously issued regulation, and the present regulations which superseded the 1940 regulations are almost identical in wording on the point with which we are here concerned.

■ The District Court case of Richards v. Social Security Administration, 76 F.Supp. 12, does give support to the contentions of the plaintiff herein. However, we think Richards was wrongly decided. The conclusions we have reached are supported by Colbert v. Hobby, D.C., 130 F.Supp. 65, affirmed sub. nom. Colbert v. Folsom, 2 Cir., 230 F.2d 846, and Stuart v. Hobby, D.C., 128 F.Supp. 609.

In Colbert, the Court was dealing with the question of whether the support order must be in effect at the time of the wage earner's death. The Court of Appeals strongly endorsed the District Court's opinion in which it was stated, 130 F.Supp. 69, 70: "It is true that the former § 209(n) [now § 216(h) (2)] does not explicitly require the court order to be in effect on the date of the wage earner's death, as it does for the conditions of membership in the same house-

hold and the receipt of regular contributions from him toward support. But * * * [the Regulation] does require the order to be in effect at the time of death. It appears to be quite reasonable under the terms of the statute and not inconsistent with its purposes. And here again, the validity of the regulation is reinforced by the Congressional reenactment of the 'living with' definition without disapproval of the regulations previously promulgated."

■ The second contention of plaintiff is that the order of the Peoria County Court was in effect at the date of wage earner's death. Plaintiff argues that the order, by its terms, was effective for one year, that is, up to and including September 10, 1940; that said order was suspended because prior to the date of the expiration of the order, wage earner had left the state of Illinois. Assuming that there was some evidence in the record which would be the basis for a finding that the wage earner had left Illinois prior to September 10, 1940, there is nothing in Illinois law on which to base a holding that the order of September 11, 1939 was suspended during the wage earner's absence from the state and which made it effective upon the date of his death.

The statute under which the order was issued was Section 4 of the Illinois Wife Abandonment Act of June 24, 1915 which specifically limits the order to "a term not exceeding one year." S.H.A. ch. 68, § 27, 7 Jones, Ill.Stat.Anno. § 37.005. No new order was entered and Illinois decisions demonstrate that the Court would have had no authority to enter more than one extension of a period of a year, or a total effective period of two years. People v. Cahill, 300 Ill. 279, 133 N.E. 228.

Had the wage earner left Illinois prior to the expiration of the one-year support period, there is nothing in Illinois law to show that by that fact the probation order was extended indefinitely, and that said order was in full effect at the time of wage earner's death. There is no such provision in the Illinois Wife Abandonment Act, nor can such assertion be based upon the Illinois law relating to probation. In fact, the Illinois Criminal Code, S.H.A. ch. 38, § 791, 8 Jones, Ill. Stats.Anno. § 37.778, provides the departure by a probationer from the state without prior leave of the court shall itself operate as a termination of probation.

■ In any event, we think the Referee as trier of fact, invested with the function of evaluating the evidence and drawing inferences therefrom, was justified in concluding that plaintiff had failed to show that the wage earner had left Illinois prior to September 11, 1940, and that the evidence failed to establish exactly when he did leave the state. We cannot make our own appraisal of the evidence. Section 205(g) of the Act expressly makes the Secretary's finding conclusive if supported by substantial evidence. See Thompson v. Social Security Board, 81 U.S.App.D.C. 27, 154 F.2d 204. Of course, the finality accorded by Section 205(g) to the Administrative findings extends as well to the inferences from the evidence made by the Secretary if a substantial basis for them appears in the record. United States v. Lalone, 9 Cir., 152 F.2d 43, 44; Walker v. Altmeyer, 2 Cir., 137 F.2d 531, 533–534. We hold that there is substantial evidence in the record to support the Secretary's findings and inferences which he drew therefrom.

The statutory qualification for receipt of widow's benefits not having been made by plaintiff, the disallowance of her claim should have been affirmed. The decision of the District Court to the contrary is

Reversed.