**Charlie N. HOOVER, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. No. 2222.**

United States District Court
W. D. North Carolina,
Shelby Division.

Oct. 14, 1964.

M. Leonard Lowe, Forest City, N. C., for plaintiff.

William Medford, U. S. Atty., and James O. Israel, Jr., Asst. U. S. Atty., Asheville, N. C., for defendant.

CRAVEN, Chief Judge.

Claimant in this case is a 55-year-old man who has a back and right leg impairment which is the result of a herniated disc. He appeals to the District Court from a decision of the Secretary of Health, Education and Welfare which denies him benefits under Sections 216(i), as amended, and 223 of the Social Security Act (42 U.S.C.A. § 416(i), as amended, § 423(a)).

Jurisdiction is conferred by 42 U.S.C.A. § 405(g), but this court can only review the record to determine whether the decision of the Secretary is supported by substantial evidence. Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962); Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir. 1962).

It appears from the record that claimant was born February 27, 1909, and became unable to work in March, 1961. At present he does no work of any kind, and he and his wife are supported in part by church donations and in part by welfare donations. He has a seventh-grade education and worked as a loom fixer in the textile industry for approximately 30 years.

After consideration of medical evidence it was the decision of the Secretary that "The operation for the removal of a herniated disc is one which an individual can undergo with reasonable effort and with safety to himself", and although claimant's condition was found to be of such severity as to bar him from his usual occupation his claim was denied on the ground that it was remediable and, therefore, could not "be expected to result in death or to be of long-continued and indefinite duration" as required by 42 U.S.C.A. § 423(c) (2).

Claimant excepts to this ruling and contends that due to his age, health, and the condition of his heart, he cannot undergo such surgery with reasonable safety. He states that he has been advised by medical authorities that his condition cannot be improved by the removal of the herniated disc. But no evidence of this appears in the record.

Back injuries are difficult to evaluate. The best guide in this case is diagnosis and prognosis of medical doctors. Almost all the evidence relating to claimant's physical disability is derived from reports furnished by several doctors who examined him over a two-year period. It would be of little value to repeat here the objective medical diagnosis other than to state that the physicians' reports indicate general agreement that his physical impairment resulted from a herniated disc, and that at least one doctor, a neurosurgeon at the North Carolina Baptist Hospital, felt that claimant's condition could be helped by surgical removal of the herniated disc.

The Appeals Council noted medical authority on the question of whether disc surgery may be undergone with reasonable safety to an individual. One authority examined reported no deaths in

4,000 such operations, while another study revealed the vast majority of patients are benefited by this type of surgery.[1]

Under 42 U.S.C.A. § 423(c) (2) the term "disability" is defined as follows: "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." Judge Bell of the 4th Circuit said in Bradey v. Ribicoff, 298 F.2d 855 at 857 (4th Cir. 1962): "An impairment which is presently capable of being classified as remediable cannot meet the requirement that it be 'of long-continued and indefinite duration'. We think it plain that the express terms of the Act require a reasonable showing of the permanence of the disability. * * * Therefore, if the Secretary had before him substantial evidence from which to conclude that Claimant's bladder condition was susceptible to successful treatment, he was justified in a finding of non-disability." It is not clear whether Bradey involved *surgery*.

Is a claimant required to submit to major surgery in order to establish a period of disability under this section? The decisions are in conflict. In Remington v. Folsom, 157 F.Supp. 473 (N.D. N.Y.1957), the court upheld a decision of the Secretary denying disability benefits to a claimant on the ground that "the specialists who examined him agreed that a spine fusion operation had good chance to remedy to a great extent the disability." To the contrary is Martin v.

Ribicoff, 195 F.Supp. 761 (E.D.Tenn. 1961). In a well-written opinion Judge Taylor discussed the problem of whether claimant's refusal to have a major surgical operation precludes him from establishing a period of disability under the Act. In finding for the claimant the court said: "The evidence shows that plaintiff has at least one ruptured intervertebral disc * * * with some hypertrophic arthritis of the lumbar spine, which major surgery might or might not remedy or partially remedy; that he has refused major surgery for fear of dire results, and that under such circumstances, his refusal to submit to surgery does not preclude him from having established a period of disability under the Social Security Act." However, the persuasiveness of this opinion is undermined by a later Fifth Circuit decision to the contrary: Ward v. Celebrezze, 311 F.2d 115 (5th Cir. 1963). That Court said: "The evidence does not end, however, with testimony as to the present disability of the appellant. The hearing examiner, in his report, set forth 'that the reports of all the neurosurgeons who saw claimant and who, from training, are best qualified to determine the remediability of claimant's impairment, which is primarily a matter of pain, clearly show that his condition is remediable and his ability to work could be substantially improved' [by surgery]."

■ Nowhere in this record does it appear that claimant flatly refused surgery.[2] From a reading of claimant's brief it appears that he is reluctant to submit to surgery. But reluctance is not

---

1. Of 1453 patients who underwent such operation, 97.6% stated they were benefited by the operation. 1440 had pre-operative back pains, and of this number over 48% had obtained complete relief with 47% having obtained partial relief. Only slightly over 2% had obtained no relief and 1.8% complained that the pain was worse post-operatively. In the same group 1444 had pre-operation leg pain, following which almost 97% obtained complete or partial relief of symptoms and only slightly over 3% claimed a worsening of leg pain or no relief. 92% of the patients were found

to be working. See pp. 6–7 of Decision of Appeals Council.

2. In a letter to the North Carolina State Board of Public Welfare, Dr. Courtland H. Davis, Jr., neurosurgeon at the North Carolina Baptist Hospital, stated: "(I)t is my feeling that he could be helped by surgical removal of this disc. * * * The patient was so informed and he was noncommital in his response." Dr. W. H. Tiller stated in his medical report of claimant, "Recommended he enter the hospital for treatment of the back but feels he is financially unable to do so now."

refusal. It appears that he is without money to pay for an operation and the necessary period of hospitalization. Can it nevertheless be arranged? The record is silent. He cannot be said to have refused until it is shown he has a choice. If claimant consents to surgery but cannot get it because he is unable to finance it, his condition is not "remediable" within the meaning of the Act.

The case will be remanded to the Secretary to consider whether: (1) surgery is obtainable with reasonable effort?; (2) if obtainable, whether claimant then refuses it?

Only if the record supports affirmative answers to both these questions can it be said his condition is remediable.

Remanded.